IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH ELLIOTT, CA-1717,        )
            Plaintiff,          )   Civil Action No. 05-727
                                )   District Judge Joy Conti Flowers
            vs.                 )   Magistrate Judge Amy Reynolds Hay
                                )
JEFFERY A. BEARD; ET Al.,       )
            Defendants.         )

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

        It is respectfully recommended that Defendants' Motion to

Dismiss (doc. no. 19) be granted in part and denied in part.

Specifically, Defendants' Motion should be granted with respect

to the following claims:  First Amendment claim of denial of

access to court; Eighth Amendment claim concerning the conditions

of confinement in the LTSU; Due Process claims against Defendants

Scire and Burks; and Plaintiff's state law claims.  The Motion to

Dismiss should be denied as to Plaintiff's Due Process claims

regarding his allegations of illegal medical experimentation and

treatment.  Further, as discussed in detail below, Defendants did

not move for dismissal of Plaintiff's retaliation claim and equal

protection claim.  Thus, these claims remain pending in this

action.

II.  REPORT

        Plaintiff, Joseph A. Elliott, Sr., is a Capital Case

prisoner confined in the Long Term Segregation Unit (LTSU) at the

State Correctional Institution at Fayette, Pennsylvania (SCI-

Fayette).  He commenced this civil action against various
officials and/or employees of the Pennsylvania Department of
Corrections (DOC) including the following:  Jeffery A. Beard, DOC
Secretary; John S. Shaffer, DOC Executive Deputy Secretary; Lance
Couterier, DOC Chief Psychologist; Fred Maue, DOC Chief
Psychiatrist; Sharon M. Burks, DOC Chief Grievance Coordinator;
John Doe, DOC Director of Inmate Classification; Harry S. Wilson,
Superintendent at SCI-Fayette; Carol A. Scire, Grievance
Coordinator at SCI-Fayette; Linda D. Harris, Deputy
Superintendent at SCI-Fayette; and Mark A. Krysevig, Deputy
Superintendent at SCI-Fayette.

    A.   <u>Plaintiff's Allegations</u>

    Plaintiff alleges liability against Defendants under 42
U.S.C. § 1983 and various state laws.  Specifically, he claims
that Defendants placed him in the LTSU in violation of his due
process and equal protection rights and in violation of state
law.  He claims that he has been illegally committed to the LTSU,
which is being operated as a Medical/Security Control Unit and
that he is being forced to submit to psychological medical
treatment and research without his consent, including
experimental medication (Compl. ¶¶ 1-5).  He claims that
Pennsylvania Department of Corrections (DOC) policy 6.5.1
prohibits the confinement of Pennsylvania Capital Prisoners in
the LTSU or any other Special Management Unit (SMU).  He further

claims that he is being denied equal protection in that he is not receiving the benefits provided to other Capital Case prisoners (Compl. ¶ 16) and that he was placed in the LTSU in retaliation for filing grievances (Compl. ¶¶ 17, 28).  He complains that Defendants placed him in suicide strip cell status where he was denied his legal property, clothing, personal hygiene items, stationary properties, mini law library privileges, legal property exchange privileges and exercise and yard privileges without adequate justification (Compl. ¶ 27).  He states that he is housed with mentally ill prisoners and permitted to live in feces, urine, trash-filled cells with bugs, insects, etc., coming out of the cells and food trays and drinks are passed out into these cells (Compl. ¶¶ 41, 44).  He also states that Defendants allow prisoners to contaminate areas of the prison by throwing or spitting blood, urine and feces around the showers, yards and tiers (Compl. ¶ 46-47).  He complains he has been denied recreation since December 23, 2004 and has been placed in a cell with a 7 by 7 foot dog cage attached to the back of the cell and no other capital case prisoners are being subjected to this type of treatment (Compl. ¶ 43).  He claims that Defendants knowingly allow this activity and encourage prisoners to murder each other and engage in germ warfare (Compl. ¶ 48-50).

He asserts Defendants use these tactics as retaliation and punishment for his engaging in protected activity (Compl. ¶ 28).

He claims that he is denied access to courts and legal assistance to complain about his conditions of confinement including guards refusing to feed him, guards sexually assaulting him, guards using the cold to torture him without adequate clothing or bedding (Compl. ¶¶ 31-33, 38-39), refusing to allow him to purchase more than one writing tablet, not allowing Plaintiff to purchase an adequate amount of postage-paid envelopes, not allowing him to purchase the correct size shower shoes, size 14, and illegally confiscating his legal materials (Compl. ¶ 54). He further asserts that the Defendants have issued orders to move him from cell to cell every thirty days without the cells being cleaned or sterilized against infection from diseased inmates (Compl. ¶¶ 22-25) and that he is forced to walk to the showers without shower shoes and is exposed to diseases from the other inmates (Compl. ¶ 55-56).

Next, he asserts that Defendants Beard, Shaffer and Wilson are refusing to force Defendants Burks and Scire to properly solve his grievances by adequately supervising the DC-ADM 804 procedure (Compl. ¶ 26). He further complains that he is denied access to the mini library disparate to the capital defendants at SCI-Green and SCI-Graterford where two capital prisoners are allowed to use the mini-library together to assist each other, which is in contravention of DC-ADM 007 (Compl. ¶¶ 34-35). He

asserts that is being treated differently from all other capital inmates who are housed in SCI-Greene and SCI-Graterford.

> B.   Underline Standard of Review

Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6).  A motion to dismiss cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976).[1]

---

1  In addition, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in considering a motion to dismiss under Rule 12(b)(6). Pryor v. National Collegiate Athletic Ass'n., 288 F.3d 548, 560 (3d Cir. 2002) (noting that documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim and may be considered by the court in deciding a motion to dismiss); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

C.   <u>Three Strikes Rule</u>

Defendants first claim that Plaintiff's IFP status should be revoked in accordance with the so-called "three strikes rule" codified at 28 U.S.C. § 1915(g).  Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal <u>in a court of the United States</u> that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (as amended) (emphasis added).  Defendants reference three prior civil cases brought by Plaintiff and dismissed sua sponte as frivolous: <u>Elliot v. Goode, et al.</u> (E.D.Pa. 95-536); <u>Elliot v. Dark</u> (E.D.Pa. 96-3421); and <u>Elliot v. C.O.I. Broski, et al.</u> (Court of Common Pleas of Greene County, Pennsylvania, A.D. 537 of 2001).  However, inasmuch as state court actions are not actions "in a court of the United States," the three-strike rule does not apply here.  <u>See</u> 28 U.S.C. § 451("As used in this title: The Term 'court of the United States' includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress that judges of which are entitled to hold

office during goos behavior."). Accordingly, Plaintiff may properly proceed *in forma pauperis*.

D. <u>Transfer and Confinement in the LTSU</u>[2]

Next, Defendants argue that Plaintiff's claims concerning his transfer and confinement in the LTSU fail to state a claim upon which relief may be granted.

In order to assert liability against the Defendants pursuant to 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: (1) that the alleged misconduct was committed by a person acting under color of state law; and (2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>West v. Atkins</u>, 487 U.S. 42 (1988); <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), <u>overruled in part on other grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986).

It appears that Defendants were acting under color of state law during the relevant time period. Consequently, the issues raised in the Complaint concern whether Defendants violated any of Plaintiff's constitutional rights. Plaintiff claims that his due process and equal protection rights, as well as his right against cruel and unusual punishment, were violated by his

_____

2  "The LTSU is the most restrictive of the three special units that Pennsylvania maintains for difficult prisoners. ... [It] is reserved for the Commonwealth's "most incorrigible, recalcitrant inmates." <u>Beard v. Banks</u>, ___ U.S.___ , 126 S.Ct. 2572, 2576 (June 28, 2006) (internal record citations omitted).

transfer to and continued confinement in the LTSU.  These issues
are discussed separately below.

        1.    <u>Due Process</u>

Three kinds of section 1983 claims may be brought against
the State under the Due Process Clause of the Fourteenth
Amendment.[3]  <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990).  First,
a plaintiff may bring suit under section 1983 for a violation of
his specific rights as guaranteed by the Bill of Rights.  <u>Id.</u>
Second, a plaintiff may assert a Fourteenth Amendment claim under
the "procedural" aspect of the Due Process Clause, which
guarantees fair procedure for the deprivation of a
constitutionally-protected interest in life, liberty or property.
<u>Id.</u>  Third, a plaintiff may assert a claim under the
"substantive" prong of the Due Process Clause, which bars certain
arbitrary, wrongful government actions regardless of the fairness

---

     3  The Due Process Clause of the Fourteenth Amendment provides as
follows.

            Section 1.  All persons born or naturalized in
            the United States, and subject to the
            jurisdiction thereof, are citizens of the United
            States and the State wherein they reside.  No
            State shall make or enforce any law which shall
            abridge the privileges or immunities of citizens
            of the United States; nor shall any State deprive
            any person of life, liberty, or property, without
            due process of law; nor deny to any person within
            its jurisdiction the equal protection of the
            laws.

U.S. Const. amend. XIV, §1.

of the procedures used to implement them.  <u>Id.</u> (<u>quoting</u> <u>Daniels</u>
<u>v. Williams</u>, 474 U.S. at 331)).

a. <u>Eighth Amendment</u>

Under the first category, Plaintiff's allegations regarding
the conditions of his confinement in the LTSU invoke the
protections of his specific rights as guaranteed by the Eighth
Amendment in the Bill of Rights.  In this regard, The Eighth
Amendment protects individuals against the infliction of "cruel
and unusual punishments." U.S. Const. amend. VIII.  This
protection, enforced against the states through the Fourteenth
Amendment, guarantees incarcerated persons humane conditions of
confinement.  The Eighth Amendment requires prison officials to
ensure that inmates receive adequate food, clothing, and shelter.
<u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984).  An inmate must
show two elements in order to make out a prima facie case that a
prison official's actions violated the Eighth Amendment's
prohibition against cruel and unusual punishment with respect to
prison conditions.  First, a prisoner must show that the
condition, either alone or in combination with other conditions,
deprived him of "the minimal civilized measure of life's
necessities," or at least a "single, identifiable human need."
<u>Wilson v. Seiter</u>, 501 U.S. 294 (1991) (<u>citing</u> <u>Rhodes v. Chapman</u>,
452 U.S. 337, 347 (1981)).  The Supreme Court has explained that
the first showing requires the court <u>objectively</u> to determine

9

whether the deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make
> out a conditions-of-confinement claim.
> Because routine discomfort is "part of
> the penalty that criminal offenders pay
> for their offenses against society, only
> those deprivations denying 'the minimal
> civilized measure of life's necessities' are
> sufficiently grave to form the basis of an
> Eighth Amendment violation."

Hudson v. McMillan, 503 U.S. 1, 9 (1992) (citations omitted).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind.  "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 834 (1994)(quotation omitted).

> [A] prison official cannot be found liable
> under the Eighth Amendment for denying an
> inmate humane conditions of confinement
> unless the official knows of and disregards
> an excessive risk to inmate health or safety;
> the official must both be aware of facts from
> which the inference could be drawn that a
> substantial risk of serious harm exists, and
> he must also draw the inference. . . .  The
> Eighth Amendment does not outlaw cruel and
> unusual "conditions"; it outlaws cruel and
> unusual "punishments."

Farmer, 511 U.S. at 838.

To demonstrate an extreme deprivation, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting

from the prisoner's unwilling exposure to the challenged conditions.  <u>Rish v. Johnson</u>, 131 F.3d 1092, 1096 (4th Cir. 1997) (quotations omitted).

The Superior Court of Pennsylvania recently rejected an Eighth Amendment claim regarding the LTSU that is similar to Plaintiff's claim, wherein the Court made the following observations.

> The basic conditions in this most restrictive of units designed for the most severe behavioral problems in the prison population are, perhaps not surprisingly, very unpleasant.  There is a regular problem of feces throwing and the accompanying stench . . .  Another practice of stopping up toilets until they run over and flood the cells, is not uncommon and can lead to similar unsanitary conditions. ... during which the inmates are residing and even eating their meals within the sight and smell of human waste.
>
>         *   *   *
>
> As noted above, the inmates in the LTSU have 23 hours of solitary confinement in their cells per day with one hour a day in the yard.  There is considerable noise described as banging and screaming on the unit at all hours of the day and night and the lights are left on twenty-four hours a day.  Many of the inmates are described as suffering from mental and emotional illnesses, although the severely mentally ill are apparently housed in a separate unit.
>
>         *   *   *
>
> There have been problems with the heat during which the cells have been quite cold during the winter months, although extra blankets appear to have been available at those times. ...  At times, pepper spray is used to control unruly inmates, and the spray lingers in the air, causing problems for the surrounding inmates.

         &ast;  &ast;  &ast;

    In one instance, Mr. Rivera testified to having been put in a "four-point restraint" for a misconduct, which constituted being chained to a metal bed frame by all four limbs, during which restraint he was unable to use the bathroom and was forced to soil himself with urine and feces.  Prison officials noted this was after he attacked a guard and had to be forcefully removed from his cell.

         &ast;  &ast;  &ast;

    The unit in which [Riviera] reside[s] is an exceptional unit reserved for those prisoners who have significantly deviated from the requirements of life in the prison and whose behavior has continually posed a significant problem. ... This Court would expect the conditions on such a unit to be even less pleasant than the rest of the prison, and that few privileges, comforts or amenities will be available, as the LTSU is disciplinary custody and is intended to be punitive. Other behavior modification approaches have failed before the inmates reach this point.

<u>Rivera v. Pennsylvania Dept. of Corrections</u>  837 A.2d 525, 530-532 (Pa. Super. 2003).

    Aside from his claims of involuntary medical treatment, discussed below in connection with his due process claims, Plaintiff's conditions of confinement claims resemble those set forth in <u>Rivera</u>, which were found not to constitute cruel and unusual punishment.  As Defendants point out, the conditions complained about by Plaintiff are the result of the actions of other LTSU inmates, not Defendants.  Plaintiff does not allege that Defendants do not respond to such actions.  Thus, Plaintiff

has failed to allege a violation of his Eighth Amendment rights with respect to the conditions of confinement in the LTSU.

### b. Procedural Due Process

With respect to the second category of due process claims, procedural due process, the Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum v. Fano, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's due process claims is whether Defendants' actions impacted a constitutionally-protected liberty interest. In this regard, a liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt, 459 U.S. at 466. A liberty interest inherent in the Constitution arises

13

when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778.

In addition, the Supreme Court has held that a prisoner has an inherent liberty interest entitling him to due process protections before he can be involuntarily transferred from prison to a mental hospital. See Vitek v. Jones, 445 U.S. 480 (1980). In so holding the Court noted that "[a] criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, but they do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections." Id. at 493-94. This is precisely what Plaintiff alleges in his Complaint. Specifically, he alleges that the LTSU is used for medical research and experimentation and that mental health techniques and treatments are being forced upon him without his consent. These allegations, taken as true as this Court must in deciding a motion to dismiss, are sufficient to state a violation of Plaintiff's inherent due process rights.

14

See also Washington v. Harper, 494 U.S. 210, 221 (1990) (holding that a prisoner possesses an inherent liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment).

Moreover, Plaintiff can state a claim under the Due Process Clause if state law or regulation has created a constitutionally-protected liberty interest in remaining free from the LTSU detention as alleged by Plaintiff.  In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 483.  Applying this new test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence.

In the case at bar, Plaintiff's allegations concerning his confinement in the LTSU can be construed as alleging an atypical and significant hardship in relation to the ordinary incidents of

prison life.  Again, he alleges he is being subjected to medical experimentation and treatment without his consent.  Further, he points to DOC Policy Statement "Research Activities," Policy Number 2.1.2, dated February 5, 1999, which allegedly prohibits this activity without his consent.  Finally, he contends that the Pennsylvania law prohibiting involuntary commitment for mental illness grants him a right to due process.  See 50 Pa. Stat. Ch. 15, §§ 7301, et seq.  Defendants do not address these assertions.[4]  Plaintiff's allegations, taken as true as this Court must in deciding a motion to dismiss, are sufficient to state a violation of Plaintiff's inherent due process rights.  Therefore, Defendants are not entitled to dismissal of Plaintiff's procedural due process claims with regards to his allegations of involuntary medical treatment.

### c. Substantive Due Process

Finally, Plaintiff's allegations raise a claim under the substantive due process prong of the Fourteenth Amendment.  This right protects individuals against arbitrary governmental action regardless of the fairness of the procedures used to implement

---

4.  Defendants are correct citing Brown v. Blaine, 833 A.2d 1166, 1172 (Pa. Commw. 2003) for the assertion that confinement in a LTSU does not impose an "atypical and significant hardship" in relation to ordinary prison life.  However, Brown did not make the allegations Plaintiff is making here, i.e., that the LTSU is being run as a medical treatment facility.

them.[5]   The Supreme Court has declined to set forth a precise
rule outlining the contours of "arbitrary" conduct.
Notwithstanding, in County of Sacramento v. Lewis, 523 U.S. 833
(1998), the court instructed that the substantive component of
the Due Process Clause only can be violated by governmental
employees only when their conduct amounts to an abuse of official
power that "shocks the conscience."  In so holding, the court
reiterated its long standing jurisprudence that only the most
egregious official conduct can be said to be "arbitrary" in the
constitutional sense.

In the present action, it is clear that the Defendants'
alleged actions in promulgating and enforcing the terms of the
LTSU do not violate the substantive prong of the Due Process
Clause.  What is less clear is whether his allegations asserting
involuntary medical treatment do.  Defendants did not address
this claim.  Thus, it remains pending.

E.   Access to Courts

Plaintiff alleges that Defendants have violated his right to
access to the courts by failing to allow him access to the mini
law library with another inmate to assist him.  This claim

---

5.   See Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (the
Due Process Clause was intended to prevent government officials from
abusing power, or employing it as an instrument of oppression); Wolff
v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process
is protection of the individual against arbitrary action of
government.").

invokes the protections of the First Amendment, which provides as
follows.

> Congress shall make no law respecting an
> establishment of religion, or prohibiting the
> free exercise thereof; or abridging the
> freedom of speech, or of the press; or the
> right of the people peaceably to assemble,
> and to petition the Government for a redress
> of grievances.

U.S. Const. Amend. I.

The right of access to the courts is guaranteed by the First
Amendment of the United States Constitution.  In Bounds v. Smith,
430 U.S. 817 (1977), the United States Supreme Court held "that
the fundamental constitutional right of access to the courts
requires prison authorities to assist inmates in the preparation
and filing of meaningful legal papers by providing prisoners with
adequate law libraries or adequate assistance from persons
trained in the law."  Id. at 828.  However, in Lewis v. Casey,
518 U.S. 343 (1996), the Supreme Court effectively repudiated
much of its prior holding in Bounds.  In Lewis, the Supreme Court
held that Bounds did not recognize an independent right in
prisoners to have an adequate law library; instead, it concerned
the established right of access to the courts.  Lewis 518 U.S. at
351.  Thus, the Lewis Court held that, in order to successfully
challenge a denial of this right of access to the courts, it is
not enough for an inmate to establish that the law library
provided was inadequate or he was denied access either to the law

library or to legal materials; rather, he must establish that such inadequacies in the library or in accessing legal materials caused him actual harm.

In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: (1) a non-frivolous, underlying claim: (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Christopher, 536 U.S. at 415.

The Court explained that the first requirement mandated that the Plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that "the 'arguable' nature of the underlying claim is more than hope." Id. The second requirement requires Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying

19

litigation.  Third, Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation.  Id. at 414.

Here, Plaintiff has failed to identify any legal action he was unable to pursue as a result of Defendants' alleged actions. Thus, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's access to courts claim and their motion to dismiss should be granted as to this claim.

    F.   Sovereign Immunity

Next, Defendants argue that they are entitled to sovereign immunity with regards to Plaintiff's state law claims.  See 42 Pa.C.S. §§ 8521-8522; 1 Pa.Cons.Stat. § 2310.  This Court agrees. Defendants acting within the scope of their official state duties are immune from suit except as the Attorney General of Pennsylvania specifically waives that immunity.  Section 8522 (b) provides an exhaustive list of exceptions to sovereign immunity: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, and control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  42 Pa.C.S. § 8522(b).  None of these

20

exceptions applies here.  Thus, Defendants are entitled to sovereign immunity with respect to Plaintiff's state law claims.

     G.   Personal Liability

     Defendants next seek dismissal on the basis that Plaintiff failed to identify the specific acts that each defendant was responsible for that violated his constitutional rights.  In this regard, in order to establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.  Rizzo v. Goode, 423 U.S. 362 (1976).  Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions.  Rode, 845 F.2d at 1207.  See also Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

     In our view, Plaintiff's Complaint sufficiently identified the acts of the Defendants and their individual involvement in his claims.  Specifically, Plaintiff claims that Defendants Beard, Shaffer, Couterier, Maue, Doe (Director of

21

Classification), Wilson, Harris and Krysevig were responsible for transferring him and keeping him in the LTSU.  These allegations, together with Plaintiff's Response in Opposition to Defendants' Motion (doc. no. 28), raise questions as to Defendants' actions, knowledge, and authority with regard to Plaintiff's claims. Consequently, the Defendants' Motion to Dismiss these Defendants should be denied at this time.

With respect to Defendants Burks and Scire, Defendants are correct that Plaintiff has failed to state a claim upon which relief may be granted.  Specifically, Plaintiff's allegations against these Defendants concern only their actions in reviewing and responding to his grievances and appeals related thereto. "Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights.  . . .  Prisoners do have a constitutional right to seek redress of their grievances from the government, but that right is the right of access to the courts, and this right is not compromised by the failure of the prison to address his grievances." Wilson v. Horn, 971 F.Supp. 943, 947 (E. D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998) (Table).

Therefore, the failure of a prison official to provide an appropriate response to an inmate grievance simply is not a

federal constitutional violation.  Consequently, Defendants'
Motion to Dismiss Defendants Scire and Burks should be granted.

     H.   Qualified Immunity

     As a final matter, Defendants seek dismissal of the claims
they addressed in their Motion to Dismiss under the doctrine of
qualified immunity.  Qualified immunity from a civil rights
action is "an entitlement not to stand trial or face the other
burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526
(1985).  State officials performing discretionary acts enjoy
qualified immunity from money damages in section 1983 actions
when their conduct does not violate "clearly established"
statutory or constitutional rights of which a "reasonable person"
would have known at the time the incident occurred.  Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982); Saucier v. Katz, 533 U.S.
194 (2001).

     Here, Defendants' qualified immunity argument does not
encompass Plaintiff's remaining due process claims regarding
allegedly unlawful medical experimentation and treatment.  Thus,
Defendants have not demonstrated that they are entitled to
dismissal of these claims under the doctrine of qualified
immunity.

     I.   Retaliation and Equal Protection

     Plaintiff also raised a retaliation claim and an equal
protection claim in his Complaint, neither of which were

addressed by Defendants in their Motion.  Specifically, Plaintiff claimed that Defendants placed him in the LTSU for engaging in the protected activity of seeking redress from the government (Compl. § 17).  He further claimed that he was being treated differently from all other capital case prisoners.  These claims remain pending in this action.

III. <u>CONCLUSION</u>

Based on the discussion above, it is respectfully recommended that Defendants' Motion to Dismiss (Doc. 19) be granted in part and denied in part.  Specifically, Defendants' Motion should be granted with respect to the following claims: First Amendment claim of denial of access to court; Eighth Amendment claim concerning the conditions of confinement in the LTSU; Due Process claims against Defendants Scire and Burks; and Plaintiff's state law claims.  The Motion should be denied as to Plaintiff's Due Process claims regarding his allegations of illegal medical experimentation and treatment.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections

to respond thereto.  Failure to timely file objections may

constitute a waiver of any appellate rights.

                                Respectfully submitted,

                                /s/ Amy Reynolds Hay
                                AMY REYNOLDS HAY
                                United States Magistrate Judge


Dated:  1 September, 2006


cc:  The Honorable Joy Flowers Conti
     United States District Judge

     Joseph A. Elliott, SR.
     CA-1717
     SCI Fayette
     Box 9999
     LaBelle, PA 15450-0999

     Mariah Passarelli
     Deputy Attorney General
     Office of Attorney General
     6th Floor, Manor Complex
     564 Forbes Avenue
     Pittsburgh, PA 15219

25